UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **JASON BENNETT, on behalf of himself and all others similarly situated,** | * * * | Civil Action No. 2:16-cv-03908-DLR |
| **Plaintiff,** | * * | CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. |
| v. | * * | § 227 et seq. (TELEPHONE CONSUMER PROTECTION ACT) |
| | * | |
| **GODADDY.COM, LLC,** | * * | |
| **Defendant.** | * | |

## FIRST AMENDED COMPLAINT

This case arises from the intentional and repeated efforts of Defendant to market its business in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* (hereinafter referred to as the "TCPA"). Plaintiff and Class Members now come to this Honorable Court seeking injunctive relief, a judgment against Defendant for violations of the TCPA, statutory damages as set forth in the statute, the costs incurred in this action, and for such other, further and different relief to which Plaintiff and Class Members may be entitled under the circumstances. As more specific grounds therefore, Plaintiff and Class Members allege on personal knowledge, investigation of undersigned counsel, and on information and belief as follows:

### PARTIES

### PLAINTIFF

1. Plaintiff Jason Bennett (herein after referred to as "Plaintiff") is a natural person who is a resident of Baldwin County, Alabama, and is over the age of 19.

2. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

**DEFENDANT**

3. Defendant, Godaddy.com, LLC (herein after referred to as "Defendant"), is a Delaware corporation with its principal place of business in Arizona.

4. Defendant is, and at all relevant times was, a "person" as that term is defined by 47 U.S.C. §153(39).

**JURISDICTION**

5. Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

6. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as the "CAFA"), codified as 28 U.S.C. §1332(d)(2). The matter in controversy exceeds $5,000,000.00, in the aggregate, exclusive of interest and costs, as each member of the proposed Class, of at least thousands, is entitled to damages of up to $1,500.00 for each call made by Defendant in violation of the TCPA. Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

7. This Court has Federal Question jurisdiction pursuant to 28 U.S.C. §1332 and 47 U.S.C. §227.

**PLAINTIFF'S FACTUAL ALLEGATIONS
REGARDING TELEMARKETING CALLS**

8. Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

9. Plaintiff has used the same cellular telephone number [(251) 654-1830 (hereinafter referred to as "Plaintiff's cellular telephone")] for many years.

**September 21, 2015 and May 20, 2016 Telemarketing Campaign Calls:**

10.     Defendant's "Customer Development Team" (hereinafter referred to as "Defendant's CDT") used an automatic telephone dialing system, as defined in 47 U.S.C. §227(a)(1) (hereinafter referred to as an ATDS), to initiate telephone calls to Plaintiff's cellular telephone on September 21, 2015 and May 20, 2016.

11.     The September 21, 2015 and May 20, 2016 calls were initiated to Plaintiff's cellular telephone because his cellular telephone number was included in a certain telemarketing "campaign"[1] (the campaign that resulted in the September 21, 2015 and May 20, 2016 calls to Plaintiff are hereinafter collectively referred to as the "September 21, 2015 and May 20, 2016 Telemarketing Campaign").

12.     The September 21, 2015 and May 20, 2016 Telemarketing Campaign calls were placed in the hope that Plaintiff would choose to purchase the renewal of some recently expired service.

13.     The September 21, 2015 and May 20, 2016 Telemarketing Campaign calls were also initiated in the hope that the CDT agent could engage in a "consultation" with Plaintiff regarding his business, whereby the CDT agent (through such "consultation") would identify GoDaddy products to offer for sale to Plaintiff.

14.     The purpose of the September 21, 2015 and May 20, 2016 Telemarketing Campaign calls initiated to Plaintiff's cellular telephone were to encourage the purchase of Defendant's services.

15.     Alternatively, the September 21, 2015 and May 20, 2016 Telemarketing Campaign calls were initiated for the dual purpose of both (1) informing Plaintiff that some service provided

---

[1] A "campaign" is a list of Defendant's customers to be called by the CDT for the purpose of telemarketing.

by Defendant had expired, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant, and was motivated, in part, by Defendant's desire to sell its services to Plaintiff.

16. The September 21, 2015 and May 20, 2016 Telemarketing Campaign calls were each a "telemarketing call" as defined in 47 U.S.C. § 227(a)(4).

**January 27, 2016 Telemarketing Campaign Call:**

17. Defendant's CDT used an ATDS to initiate a telephone call to Plaintiff's cellular telephone on January 27, 2016.

18. The January 27, 2016 call was initiated to Plaintiff's cellular telephone because his cellular telephone number was included in a certain telemarketing "campaign" (the campaign that resulted in the January 27, 2016 call to Plaintiff is hereinafter referred to as the "January 27, 2016 Telemarketing Campaign").

19. The January 27, 2016 Telemarketing Campaign call was initiated in the hope that the CDT agent could engage in a "consultation" with Plaintiff regarding his business, whereby the CDT agent (through such "consultation") would identify GoDaddy products to offer for sale to Plaintiff.

20. The purpose of the January 27, 2016 Telemarketing Campaign call initiated to Plaintiff's cellular telephone was to encourage the purchase of Defendant's services.

21. Alternatively, the January 27, 2016 Telemarketing Campaign call was initiated for the dual purpose of both (1) reaching out to Plaintiff to provide customer service/outreach, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant, and was motivated, in part, by Defendant's desire to sell its services to Plaintiff.

22. The January 27, 2016 Telemarketing Campaign call was a "telemarketing call" as defined in 47 U.S.C. § 227(a)(4).

**April 1, 2016 Telemarketing Campaign Call:**

23.     Defendant's CDT used an ATDS to initiate a telephone call to Plaintiff's cellular telephone on April 1, 2016.

24.     The April 1, 2016 call was initiated to Plaintiff's cellular telephone because his cellular telephone number was included in a certain telemarketing "campaign" (the campaign that resulted in the January 27, 2016 call to Plaintiff is hereinafter referred to as the "April 1, 2016 Telemarketing Campaign").

25.     The April 1, 2016 Telemarketing Campaign call was placed in the hope that Plaintiff would choose to continue purchasing some service that was soon to expire.

26.     The April 1, 2016 Telemarketing Campaign call also was initiated in the hope that the CDT agent could engage in a "consultation" with Plaintiff regarding his business, whereby the CDT agent (through such "consultation") would identify GoDaddy products to offer for sale to Plaintiff.

27.     The purpose of the April 1, 2016 Telemarketing Campaign call initiated to Plaintiff's cellular telephone was to encourage the purchase of Defendant's services.

28.     Alternatively, the April 1, 2016 Telemarketing Campaign call was initiated for the dual purpose of both (1) informing Plaintiff that some service provided by Defendant was about to expire, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant, and was motivated, in part, by Defendant's desire to sell its services to Plaintiff.

29.     The April 1, 2016 Telemarketing Campaign call was a "telemarketing call" as defined in 47 U.S.C. § 227(a)(4).

**<u>May 6, 2016 Telemarketing Campaign Call</u>:**

30. Defendant's CDT used an ATDS to initiate a telephone call to Plaintiff's cellular telephone on May 6, 2016.

31. The May 6, 2016 call was initiated to Plaintiff's cellular telephone because his cellular telephone number was included in a certain telemarketing "campaign" (the campaign that resulted in the January 27, 2016 call to Plaintiff is hereinafter referred to as the "May 6, 2016 Telemarketing Campaign").

32. The May 6, 2016 Telemarketing Campaign call was initiated in the hope that the CDT agent could engage in a "consultation" with Plaintiff regarding his business, whereby the CDT agent (through such "consultation") would identify GoDaddy products to offer for sale to Plaintiff.

33. The purpose of the May 6, 2016 Telemarketing Campaign call initiated to Plaintiff's cellular telephone was to encourage the purchase of Defendant's services.

34. Alternatively, the May 6, 2016 Telemarketing Campaign call was initiated for the dual purpose of both (1) reaching out to Plaintiff to provide customer service/outreach, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant, and was motivated, in part, by Defendant's desire to sell its services to Plaintiff.

35. The May 6, 2016 Telemarketing Campaign call was a "telemarketing call" as defined in 47 U.S.C. § 227(a)(4).

36. Plaintiff has not provided his prior express written consent, as defined by 47 C.F.R. §64.1200, to be contacted by Defendant for telemarketing purposes using an ATDS.

37. The calls placed to Plaintiff's telephone by Defendant were not made for "emergency purposes," as defined in 47 C.F.R. §64.1200.

38. The calls placed to Plaintiff's telephone by Defendant were initiated intentionally.

39.     As a result of Defendant's conduct in violation of the TCPA, Plaintiff is entitled to an award of minimum statutory damages of $500.00 for each of the telemarketing calls initiated to Plaintiff's cellular telephone by an ATDS.

40.     Because each of the telemarketing calls initiated to Plaintiff's telephone by an ATDS were initiated intentionally, willfully and/or knowingly by Defendant, an award of statutory damages may be increased to as much as $1,500.00 for each of the subject telemarketing calls.

41.     Plaintiff is entitled to injunctive relief to prohibit further telemarketing calls being intimated to his cellular telephone by Defendant using an ATDS.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

43.     Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Rule 23, *Federal Rules of Civil Procedure*.

44.     Plaintiff proposes the following Class definition, subject to amendments as appropriate:

> All persons within the United States to whom, from November 4, 2014 through October 19, 2016, Defendant's Customer Development Team initiated a telephone call to his or her cellular telephone using an automatic telephone dialing system pursuant to one or more of the Telemarketing Campaigns that resulted in the initiation of a telephone call to Plaintiff's cellular telephone.

Collectively all these persons will be referred to as "Class Members." Plaintiff represents, and is a member of, the Class.

45.     Excluded from this Class are all persons who have already settled or otherwise compromised their claims against Defendant. Also excluded from the Class are the Defendant,

and any entity in which the Defendant has a controlling interest, the Defendant's agents and employees, and Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and all people who submit timely and otherwise proper requests for exclusion from the Class.

46. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class Members number in the thousands of individuals.

47. Plaintiff and all Class Members have been harmed by the acts of the Defendant.

48. This Class Action seeks injunctive relief and money damages.

49. The joinder of all Class members is impracticable due to the size of the Class and the relatively modest value of each individual claim.

50. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

51. The Class can be identified easily through records maintained by Defendant.

52. There are well defined, nearly identical, questions of law and fact affecting all parties. Such common questions of law and fact include, but are not limited to, the following:

   a. Whether Defendant used an ATDS to initiate calls to Class Members' cellular telephones pursuant to the CDT's September 21, 2015 and May 20, 2016 Telemarketing Campaign.

   b. Whether Defendant's CDT's September 21, 2015 and May 20, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the purpose of encouraging the purchase of Defendant's services; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

   c. Whether Defendant's CDT's September 21, 2015 and May 20, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the dual purpose of both (1) informing Class Members that some service provided by Defendant had expired, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

d. Whether Defendant used an ATDS to initiate calls to Class Members' cellular telephones pursuant to the CDT's April 1, 2016 Telemarketing Campaign.

e. Whether Defendant's CDT's April 1, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the purpose of encouraging the purchase of Defendant's services; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

f. Whether Defendant's CDT's April 1, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the dual purpose of both (1) reaching out to Class Members to provide customer service/outreach, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

g. Whether Defendant used an ATDS to initiate calls to Class Members' cellular telephones pursuant to the CDT's May 6, 2016 Telemarketing Campaign.

h. Whether Defendant's CDT's May 6, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the purpose of encouraging the purchase of Defendant's services; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

i. Whether Defendant's CDT's May 6, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the dual purpose of both (1) reaching out to Class Members to provide customer service/outreach, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

j. Whether Defendant used an ATDS to initiate calls to Class Members' cellular telephones pursuant to the CDT's January 27, 2016 Telemarketing Campaign.

k. Whether Defendant's CDT's January 27, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the purpose of encouraging the purchase of Defendant's services; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

l. Whether Defendant's CDT's January 27, 2016 Telemarketing Campaign calls were initiated to Class Members cellular telephones for the dual purpose of both (1) reaching out to Class Members to provide customer service/outreach, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

m. Whether Defendant can meet its burden of showing that it obtained prior express written consent to use an automatic telephone dialing system to place telemarketing calls to Class Members' cellular telephones.

n. Whether Defendant's conduct was knowing and/or willful.

o. Whether Defendant is liable for minimum statutory damages.

p. Whether Defendant is liable for treble damages.

q. Whether Defendant should be enjoined from engaging in such conduct in the future.

53. Plaintiff's TCPA claim is typical of each Class Member in all relevant ways, including specifically:

a. Defendant's CDT initiated one or more calls to Plaintiff's cellular telephone (and the cellular telephones of all Class Members) using an ATDS pursuant to CDT's September 21, 2015 and May 20, 2016 Telemarketing Campaign, its May 6, 2016 Telemarketing Campaign, its April 1, 2016 Telemarketing Campaign, and its January 27, 2016 Telemarketing Campaign between November 4, 2014 and October 19, 2016.

b. The calls were initiated by Defendant's CDT to Plaintiff's cellular telephone (and the cellular telephones of all Class Members) for the purpose of encouraging the purchase of Defendant's services; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

c. The calls were initiated by Defendant's CDT to Plaintiff's cellular telephone (and the cellular telephones of all Class Members) for the dual purpose of both (1) reaching out to inform Plaintiff of an expiring (or expired) service or to provide customer service/outreach, and (2) with the intent to encourage Plaintiff to purchase additional services from Defendant; and, as such, constituted telemarketing calls as defined in 47 U.S.C. § 227(a)(4).

d. The calls were initiated by Defendant's CDT to Plaintiff's cellular telephone (and to the cellular telephones of all Class Members) without the prior express written consent of Plaintiff (or the prior express written consent any Class Member).

54. Plaintiff will fairly and adequately represent and protect the interests of the Class.

55. Plaintiff has no interests that are antagonistic to any Class Member.

56. Plaintiff has retained counsel experienced in handling claims involving violations of federal consumer protection statutes, including claims under the TCPA.

57. A class action is the superior method for the fair and efficient adjudication of this controversy.

58. Class wide relief is essential to compel Defendant to comply with the TCPA.

59. The interest of the Class Members in individually pursuing claims against Defendant is slight because the minimum statutory damages for most individuals could be less than one thousand dollars.  Such small minimum statutory damages, combined with the lack of a fee shifting mechanism in the TCPA, will result in few (if any) individual actions being filed.  Therefore, it is unlikely that a sufficient number of individual cases will be filed to deter Defendant from engaging in the same behavior in the future.

60. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue were all telemarketing calls placed by an ATDS to Class Members' cellular telephones by Defendant without Class Members' prior express written consent.

61. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

**62.** Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST COUNT

**STATUTORY VIOLATIONS OF THE TELEPHONE
CONSUMER PROTECTION ACT,
47 .S.C. §227 *et seq*.**

63. Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

64. The foregoing acts and omissions of Defendant constitute multiple violations of the TCPA, including, but not limited to, each of the above-cited provisions of 47 U.S.C. §227 *et seq*.

65. As a result of Defendant's violations of 47 U.S.C. §227 *et seq*., Plaintiff and each Class Member is entitled to an award of $500.00 in statutory damages for each call made in violation of the statute, pursuant to 47 U.S.C. §227 (b)(3)(B).

66. Plaintiff and Class Members are also entitled to, and do seek, injunctive relief prohibiting Defendant from making future telemarketing calls in violation of the TCPA.

### SECOND COUNT

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE
TELEPHONE CONSUMER PROTECTION ACT,
47 U.S.C. §227 *et seq*.**

67. Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

68. The foregoing acts and omissions of Defendant constitute multiple knowing and/or willful violations of the TCPA, including, but not limited to, each of the above-cited provisions of 47 U.S.C. §227 *et seq*.

**69.** As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §227 *et seq.*, Plaintiff and each Class Member is entitled to treble damages of up to $1,500.00 for each call made in violation of the statute, pursuant to 47 U.S.C. §227 (b)(3).

**70.** Plaintiff and Class Members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future.

## PRAYER FOR RELIEF

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court grant Plaintiff and all Class Members the following relief:

A. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the undersigned as counsel for the Class;

B. As a result of Defendant's statutory violations of 47 U.S.C. §2727(B)(1), Plaintiff seeks for himself and each Class Member $500.00 in statutory damages for each call that violated the TCPA;

C. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(B)(1), Plaintiff seeks for himself and each Class Member treble damages, as provided by statute, of up to $1,500.00 for each call that violated the TCPA;

D. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

E. Such other, further, and different relief to which Plaintiff and the Class Members may be entitled and that this Honorable Court may deem just and proper.

                    Respectfully submitted,

                    <u>s/ John R. Cox</u>
                    John R. Cox (admitted *pro hac vice*)
                    Attorney for Plaintiff and Proposed Class
                    30941 Mill Lane, Suite G-334
                    Spanish Fort, Alabama 36527
                    251.517.4753
                    john@jrclegal.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, under penalty of perjury under the laws of the State of Arizona, that I served the foregoing document via U.S. Mail, with a courtesy copy via electronic mail, to the following:

Paula L. Zecchini, AZ Bar No. 031880
Taylor P. Widawski (admitted *pro hac vice*)
COZEN O'CONNOR
999 3rd Avenue, Suite 1900
Seattle, WA 98104
Telephone:  (206) 340-1000
   Facsimile:   (206) 621-8783
   E-Mail:   pzecchini@cozen.com
      twidawski@cozen.com

Attorneys for Defendant
GODADDY.COM, LLC

SIGNED AND DATED this 1st day of December, 2017 at Spanish Fort, Alabama.

s/ John R. Cox
John R. Cox (admitted *pro hac vice*)